IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| FRANCES MARIE SIMS, *Plaintiff* | § § § |
| -vs- | § §   SA-20-CV-00722-XR |
| EILEEN MCDILDA and CHERYL BELLESEN, *Defendants* | § § § § § |

## ORDER

On this date, the Court considered the Second Motion to Dismiss filed by Defendant Cheryl Bellesen (ECF No. 16) and the Motion to Dismiss filed by Defendant Eileen McDilda (ECF No. 17). The Court also considers whether Plaintiff's claims are barred by *Rooker-Feldman*. After careful consideration, the Court dismisses Plaintiff's case.

## Background

Plaintiff Frances Marie Sims brings suit against Eileen McDilda, Assistant Attorney General for the State of Texas, and Cheryl Bellesen, Manager of Loan Recovery for the Texas Higher Education Coordinating Board, in their individual capacities. Plaintiff alleges that, between August 2001 and May 2003, she cosigned three promissory notes for college access loans administered by the Texas Higher Education Coordinating Board, and that in 2008, the State of Texas took a default judgment against the original borrower (Paul Jones) on the notes. Am. Compl. ¶¶ 8, 9.

In 2009, the State of Texas, acting by and through McDilda, filed suit against Plaintiff to collect on the notes, and Plaintiff was served with the lawsuit. *Id.* para. 10, 11. Plaintiff proceeded *pro se* in the lawsuit. Plaintiff alleges she did not receive notice of the State's motion for summary judgment or of a hearing, and the trial court granted summary judgment for the

1

State on September 9, 2011. Plaintiff further complains she never received any notice of the judgment, nor did she receive notice when in 2011 the State filed a judgment lien in the Bexar County deed records based on the judgment.

Plaintiff alleges she first became aware of the judgment on or about October 2018 when she was attempting to close on a contract for the sale of real property, and she had to defend against claims brought by the buyers due to the lien. Plaintiff alleges that in March 2019, her agent contacted the manager for Student Loan Collections, Bankruptcy and Collections Division, of the Office of the Attorney General for the State of Texas, and spoke to Cheryl Bellesen. Bellesen advised Plaintiff that the entire amount of the account associated with the three promissory notes was owed, as well as fees and interest on the prior judgment against the original borrower and an additional $5000 in fees to obtain the judgment against her. Plaintiff alleges that Bellesen required her "to pay amounts in excess of the amount owed under the judgment" including post-judgment interest. Plaintiff alleges that, in order to mitigate damages claimed by the property buyers, she paid off the lien amount required by Bellesen, and an additional $10,000 in fees incurred by the property buyers.

Plaintiff alleges that Defendants violated her due process rights under the Fourteenth Amendment. In Count One, she sues McDilda for failing to give notice of a summary judgment motion and hearing in violation of the Due Process Clause of the Fourteenth Amendment. In Count Two, Plaintiff sues Bellesen for taking her property by placing a cloud on her title in violation of the Fourteenth Amendment. In Count Three, Plaintiff sues Bellesen for taking her property by requiring her to pay sums in excess of the amount required by the judgment obtained by McDilda, in violation of the Fourteenth Amendment. In Count Four, Plaintiff sues McDilda for fraud by nondisclosure for failing to disclose to Plaintiff that a summary judgment motion

was filed and a hearing was set and knowingly failing to serve Plaintiff. In Count Five, Plaintiff sues Bellesen for fraud in the inducement for representing to Plaintiff that she owed amounts in excess of the amount set forth in the judgment taken by McDilda.[1] In addition, Plaintiff includes a Count Six entitled "Complaint for Damages," which the Court does not construe as a separate claim, but merely a request for damages for "injuries arising out of the counts set forth in this complaint." Similarly, Count Seven is simply a demand for attorney's fees.

Bellesen now moves to dismiss the § 1983 claims (Counts Two and Three) against her in her individual capacity on the basis of qualified immunity. Bellesen moves to dismiss Count Five (fraud in the inducement) pursuant to Section 101.106(f) of the Texas Tort Claims Act. Similarly, McDilda moves to dismiss Count Four (fraud by nondisclosure) under § 101.106(f) of the Texas Tort Claims Act, and moves to dismiss Count One on the basis of qualified immunity. Further, Defendants have asserted that some or all of Plaintiff's claims may be barred by *Rooker-Feldman*.

**Analysis**

**A. The state tort claims must be dismissed under § 101.106(f)**

Section 101.106(f) provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under [the Tort Claims Act] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming

---

[1] The Court previously construed Count Five in the Original Complaint as an ordinary state law tort claim. Similarly, Count Four was presented as an ordinary state law tort claim, with no invocation of any federal rights or § 1983. However, in the Amended Complaint, Plaintiff now appears to assert Count Four and Count Five under § 1983, stating that Bellesen and McDilda "while acting under the color of law, [are] liable to Frances Marie Sims for damages and attorney fees, pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, as set forth in this complaint." Am. Compl. ¶¶ 42, 47. Of course, § 1983 only provides a mechanism for suing individuals for violations of federal laws and the United States Constitution, not state law tort claims. Thus, to the extent Plaintiff is now attempting to bring these as claims under § 1983, they must be dismissed. The Court will continue to consider them as state law tort claims as originally brought.

the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106(f).

The Texas Supreme Court recently explained § 101.106(f)'s application in *Garza v. Harrison*, 574 S.W.3d 389, 393-94 (Tex. 2019). The election-of-remedies provision in section 101.106(f) of the Texas Tort Claims Act requires courts to grant a motion to dismiss a lawsuit against a governmental employee sued in an official capacity but allows the governmental unit to be substituted for the employee. As defined in § 101.106(f), a governmental employee is effectively sued in an official capacity when the suit (1) is "based on conduct within the general scope of that employee's employment" and (2) "could have been brought under [the Act] against the governmental unit." *Id.* at 394. Even when the plaintiff purports to bring the claims against the employee in their individual capacity, as in *Garza*, the claims will be deemed official capacity claims subject to § 101.106(f) if these conditions are met. By adopting section 101.106(f), the Legislature has effectively mandated that only a governmental unit can be sued for a governmental employee's work-related tortious conduct. *Garza*, 574 S.W.3d at 393-94.

Section 101.106 alters the common-law scheme of employee tort liability and requires a plaintiff to decide at the outset whether an employee acted independently and is solely liable or acted within the general scope of her employment such that the governmental unit is vicariously liable. *Id.* at 399. Section 101.106's scheme favors expedient dismissal of government employees when suit should have been brought against the government and "essentially prevents an employee from being sued at all for work-related torts and instead provides for a suit against the government employer." *Id.* If the tortious conduct occurred within the general scope of the employee's employment and claims could have been brought against the governmental unit under the TTCA, then suit will only lie against the governmental unit. "Simply stated, a

4

governmental employee is discharging generally assigned job duties if the employee was doing his job at the time of the alleged tort. For purposes of section 101.106(f), the employee's state of mind, motives, and competency are irrelevant so long as the conduct itself was pursuant to the employee's job responsibilities." *Id*. at 401; *see also Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011) ("This construction of section 101.106(f) does, however, foreclose suit against a government employee in his individual capacity if he was acting within the scope of employment."); *Wilkerson v. Univ. of N. Tex.*, 878 F.3d 147, 158 (5th Cir. 2017) ("Though Wilkerson alleges she acted in her personal capacity, Glazebrook gets governmental immunity. See Tex. Civ. Prac. & Rem. Code § 101.106(f).").

The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by competent authority." TEX. CIV. PRAC. & REM. CODE § 101.001(5). Here, there appears to be no dispute that both McDilda and Bellesen were acting within the general scope of their employment (*i.e*. pursuant to their job responsibilities) when they committed the actions of which Plaintiff complains. Plaintiff does not dispute this as a factual matter, and expressly alleges that at all times Defendants were employed by the Attorney General and acted under color of state law and as the employee, agent, or representative of the Attorney General's Office. Am. Compl. ¶¶ 6,7. Instead, she argues that committing fraud could not be within Defendants' general scope of authority and therefore Bellesen and McDilda were not acting within the scope and course of employment when they committed the fraud. But, as noted, the employee's state of mind, motives, and competency are irrelevant, so long as the conduct itself was pursuant to the employee's job responsibilities. *Garza*, 574 S.W.3d at 401.

Under the scope of employment prong, we ask whether there is a connection between the employee's job duties and the alleged tortious conduct. *Wilkerson*, 878 F.3d at 159; Morrison *v. Walker*, 704 F. App'x 369, 375 (5th Cir. 2017). The Texas Supreme Court recently concluded that "[n]othing in ... the statutory definition of 'scope of employment' suggests subjective intent is a necessary component of the scope-of-employment analysis." *Laverie v. Wetherbe*, 517 S.W.3d 748, 752–53 (Tex. 2017). Instead, the Texas Tort Claims Act "calls for an objective assessment of whether [an] employee was doing her job when she committed an alleged tort, not her state of mind when she was doing it." *Id.* at 753. If a connection exists between the employee's lawful job duties and the alleged misconduct, the actions are within the general scope of employment, even if the employee is motivated by ulterior motives or personal animus and the tort would thus appear to be "unauthorized." *Wilkerson*, 878 F.3d at 159 (argument that tortious interference by employee exceeded scope of employment because it was not authorized was "too narrow a view" when conduct was made in an official capacity and part of employee's general role).

Even intentional torts can be within the scope of employment. *See Hundall v. Univ. of Tex. At El Paso*, No. EP-13-00365-DCG, 2014 WL 12496895 (W.D. Tex. Feb. 21, 2014) ("Plaintiff's claims for invasion of privacy, defamation, libel, slander, civil conspiracy, fraud, harassment, victimization, negligence, gross negligence, assault, malice, and medical malpractice all arise from communications and interactions with the individual Defendants at UTEP. Since Plaintiff consistently and repeatedly asserts throughout the complaint that the individual Defendants were acting as "agent[s] of UTEP," the Court finds no reason to conclude to the contrary and thus finds that the first prong is satisfied."); *Valentine v. City of Austin*, No. A-15-CV-482, 2015 WL 12942440, at *5 (W.D. Tex. Nov. 10, 2015) ("Thus, any fraud or other intentional tort claims

6

Valentine would seek to bring against the individual police officers defendants would be foreclosed by §101.106(f)."), report and recommendation adopted in relevant part by *Valentine v. City of Austin*, No. 1-15-CV-482, 2016 WL 7756808, at *2 (W.D. Tex. Jan. 20, 2016); *Fink v. Anderson*, 477 S.W.3d 460, 468 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Thus, the fraud claim was subject to Section 101.106(f) dismissal because the actions taken by the governmental employees—even though pleaded as an intentional tort—were within their scope of employment."). The Court finds that the scope of employment prong is met.

As to the second element, Plaintiff argues she could not have brought the claims against the government employer (the Office of Attorney General) since the Tort Claims Act does not waive governmental immunity for intentional torts. But all common-law tort theories alleged against a governmental unit are assumed to be "under the Tort Claims Act" and thus could have been brought against the governmental unit, even if the governmental unit's immunity is not waived by the Act. *Wilkerson*, 878 F.3d at 161-62 & n.16 ("In determining whether a claim "could have been brought under [the Texas Tort Claims Act] against the governmental unit," § 101.106(f), it does not matter that the [defendant] would be immune from suit."); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (subsection (f) is satisfied even if the governmental unit's immunity is not waived under the Tort Claims Act). Section 101.106(f), then, asks not whether a plaintiff can succeed on the merits, but whether her claim sounds in tort. Plaintiff's claims sound in tort and "could have been brought" against the governmental employer.

Here, the conditions of 101.106(f) are satisfied as to the fraud claims against McDilda and Sims. Accordingly, the state-law fraud claims (Counts Four and Five) must be dismissed.

### B. The § 1983 claims against McDilda

Defendants have raised the issue of whether *Rooker-Feldman* bars some of Plaintiff's claims. At its core, "the *Rooker-Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments except when authorized by Congress." *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 (5th Cir. 2017) (internal quotation marks omitted) (quoting *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013)). "[T]he doctrine is a narrow one." *Truong*, 717 F.3d at 382. It is limited to those "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

A litigant is seeking "review and reversal" of a state-court judgment "when the [federal] claims are 'inextricably intertwined' with a challenged state court judgment," or when the litigant is requesting "what in substance would be appellate review of the state judgment." *Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (alteration in original) (quoting *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 350 (5th Cir. 2003)). However, *Rooker–Feldman* "does not preclude federal jurisdiction over an 'independent claim,' even 'one that denies a legal conclusion that a state court has reached.'" *Id.* Indeed, the doctrine "generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment." *Id.* If the plaintiff claims damages for injuries caused by the defendants' actions—even those occurring during litigation—rather than injuries arising from a state-court judgment itself, the federal suit is not barred by *Rooker–Feldman*. *See Truong*, 717 F.3d at 383. A federal lawsuit is not barred if the alleged injuries were caused by the defendants'

8

actions rather than by the state court judgment, even if the defendants' actions led to the state court judgment. *Saloom v. Tex. Dept. of Family & Child Prot. Servs.*, 578 F. App'x 426, 429 (5th Cir. 2014).

Plaintiff's due process claim (Count One) complains of the fact that McDilda did not serve Plaintiff with notice of the motion for summary judgment or the hearing, thereby violating Plaintiff's due process rights. Plaintiff alleges that McDilda's conduct was "done with conscious awareness" and willful. Although Plaintiff ostensibly seeks damages for alleged constitutional violations committed by McDilda during the state-court action and does not seek declaratory or injunctive relief concerning the state-court judgment itself, which would appear at first blush to be an independent claim not barred by *Rooker-Feldman*, the true source of her injuries, according to the complaint, is the state-court judgment. Two hallmarks of the *Rooker-Feldman* inquiry are the source and timing of the injury, and Plaintiff's complaint is about injuries suffered in 2018 and 2019 as a result of the judgment, not McDilda's litigation conduct. The Court thus finds that this claim is barred by *Rooker-Feldman*.

In *Land and Bay Gauging LLC v. Shor*, the Fifth Circuit noted that claims that the appellees and the judge conspired in violation of § 1983 complained of the conduct of individuals in the proceedings -- the timing of the injury was before the entry of judgment and they were not acting pursuant to the authority of a state court order. 623 F. App'x at 679-80. Abuse-of-process and tortious-interference claims based on conduct in seeking the judgment in which the plaintiff sought damages caused by allegedly fraudulent and conspiratorial actions were not barred by *Rooker-Feldman*, though the court noted that not all abuse-of-process and tortious-interference claims necessarily avoid *Rooker-Feldman*, "particularly if the gravamen of the claim is the judgment itself, not the conduct of the defendants." *Id*. at 680.

In this case, Plaintiff expressly states that the judgment is the source of her injury. She alleges that "[t]he judgment taken against Plaintiff, which is the basis of this complaint, was abstracted in Bexar County, Texas" and that "a judgment was taken against Ms. Sims and she suffered injuries as a result." Am. Compl. ¶¶ 4, 41. Although she claims she was injured by McDilda's alleged due process violations, all of the damages for which she seeks relief were incurred in 2018 and 2019, many years after the close of the litigation. The Summary Judgment entered by the state court expressly recites that the "Defendant, Frances Marie Sims, although duly and timely notified of the date and time of the hearing has failed to file with the Court any counter-affidavit to support any genuine issue of material fact." Further, Plaintiff attacks the state-court judgment as void for having been issued without sufficient notice, contrary to recitations on the face of the judgment, and complains of the injuries suffered as a result of that judgment in 2018 and 2019. She does not delineate any injury suffered in 2011 from any of McDilda's conduct.

The Fifth Circuit's decision in *Blessett v. Garcia*, 816 F. App'x 945 (5th Cir. 2020) also supports a conclusion that Plaintiff's claims are barred by *Rooker-Feldman*. There, the Court noted that Blessett had lost in his state court proceedings, which had ended long before he initiated the present suit, and portions of his complaint "appear to seek review of those state court proceedings" insofar as they alleged that "Blessett received insufficient service of process during two earlier state court proceedings, and that Garcia [the state-court winner] failed to follow proper procedures in Texas state court." *Id.* at 949. The court noted that the proper recourse for those contentions was with the state appellate courts and thereafter the United States Supreme Court.

10

Although Plaintiff seeks to bring her claims outside *Rooker-Feldman* by attacking McDilda's pre-judgment conduct during litigation, a plaintiff cannot escape *Rooker-Feldman* by casting a complaint in the form of a civil rights action. *Houston v Venneta Queen*, 606 F. App'x 725, 730 (5th Cir. 2015); *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 350 (5th Cir. 2003) (issues are "inextricably intertwined" when a plaintiff casts a complaint in the form of a civil rights action simply to circumvent the *Rooker-Feldman* rule); *see also Daw v. Consol. City of Indianapolis & Marion Cty.*, 734 F. App'x 357, 359 (7th Cir. 2018) ("the label the plaintiffs place on their claim does not matter when they expressly assert that the judgment is 'void'") (citing *Holt v. Lake Cty. Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005) (ruling that plaintiff "cannot overcome the jurisdictional bar by styling his claim as a due process action")); *Gorzelanczyk v. Baldassone*, 29 F. App'x 402, 403 (7th Cir. 2002) ("But even though Gorzelanczyk labels his lawsuit as a § 1983 action alleging due process violations, his real injury is the child support order, not any alleged denial of due process."). There is no procedural due process exception to the *Rooker-Feldman* doctrine. *Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d at 350; *Salinas v. U.S. Bank Nat'l Ass'n*, 585 F. App'x 866, 867 (5th Cir. 2014).

To summarize, although Sims seeks damages from McDilda ostensibly based on the failure to serve her with the motion for summary judgment and notice of hearing, all of the damages she complains of and seeks stem from the entry of the judgment, her lack of notice of the judgment, and the judgment's effect on her property sale many years later. Her injuries do not stem from McDilda's pre-judgment conduct. The lack of notice of the judgment entered by the state court cannot be attributed to McDilda. The fact that Sims was unaware that a judgment had been entered against her for seven years, even though she knew that a lawsuit had been filed against her, cannot be attributed to McDilda. *See Wood v. Orange Cty.*, 715 F.2d 1543, 1548

(11th Cir. 1983) (when a party has had notice of proceedings she may be held to have had constructive knowledge of the judgment entered therein). And although Sims contends she could not appeal or otherwise challenge the judgment in state court because daily fines were accruing on the property sale, she had seven years in which to discover and challenge the judgment for lack of notice. Even if the claims are not barred by *Rooker-Feldman*, they would be barred by qualified immunity as McDilda's actions were not the cause of Plaintiff's injuries.

The Court therefore dismisses Plaintiff's § 1983 claims against McDilda without prejudice.

C. **The § 1983 claims against Bellesen**

  1. Application of *Rooker-Feldman*

Plaintiff complains of two actions by Bellesen: (1) filing the judgment lien/abstract of judgment in the Bexar County deed records based on the judgment in December 2011 (Count Two) and (2) informing Plaintiff's agent that the entire amount of the account associated with the promissory notes was owed, that Plaintiff had to pay included fees and interest associated with the prior judgment obtained against the original borrower of the loans Plaintiff had cosigned for, and an additional $5000 in legal fees to obtain the judgment against Plaintiff,[2] thereby requiring Plaintiff to pay amounts in excess of the judgment against Plaintiff (including post judgment interest) to release the lien (Count Three).

The Court finds that Count Two, which alleges that Bellesen's filing the abstract of the judgment was a taking of Plaintiff's property and a violation of her Fourteenth Amendment rights, is barred by *Rooker-Feldman*. In *Land and Bay Gauging, L.L.C. v. Shor*, 623 F. App'x 674 (5th Cir. 2015), the plaintiff complained of collection efforts by the defendant based on a

---

[2] To the extent this refers to the $5000 awarded to McDilda in attorney fees in the state-court judgment, the Court notes that this amount is included in the judgment itself.

state-court arbitration award. The plaintiff asserted that the defendant converted the plaintiff's property and wrongfully executed the judgment by seizing that property pursuant to the state court's turnover order and sought restitution. The Fifth Circuit noted that a "hallmark of the *Rooker-Feldman* inquiry is the source of the federal plaintiff's alleged injury." *Id.* at 679. The Fifth Circuit concluded "that the source of the injury for the conversion, wrongful-execution, and restitution claims is the state-court judgment itself. The timing of the injury was when the [defendant] took possession of property belonging to [plaintiff] after obtaining the court orders. Thus, the timing indicates that the judgment itself was the source of these injuries." *Id.* The Fifth Circuit further emphasized that the defendant was "acting under authority granted by the state court in seizing the assets from [plaintiff's] businesses." *Id.* Thus, claims based on injuries caused by the filing of a turnover order were barred by *Rooker-Feldman*.

Here we have the filing of the state-court judgment lien in the deed records that is alleged to be a taking and the cause of Plaintiff's injury. Although *Shor* indicates that claims that state government defendants violated the federal plaintiffs' constitutional rights in the course of enforcing a state court order are not barred by *Rooker-Feldman,* Plaintiff does not allege a constitutional violation based on independent conduct by Bellesen that occurred during the filing of the state court judgment in the deed records. Although Plaintiff alleges that the "act of placing a cloud on all of Plaintiff's real properties was willful, wanton, and oppressive," there is no allegation that Bellesen engaged in independent improper conduct in filing the judgment lien. Rather, she states clearly that the "judgment taken against Plaintiff . . . is the basis of this complaint" and the "aforementioned abstract placed a cloud on the title(s) of Plaintiff's real property located in Bexar County, Texas, which injured the Plaintiff." Am. Compl. ¶ 4. The filing of the judgment lien is an "unconstitutional taking" solely because the judgment is alleged

to have been improperly obtained and void (not because of any conduct by Bellesen). The judgment itself is the cause of Plaintiff's alleged injuries, and to award damages to Plaintiff based on this claim would require the Court to find that the judgment was improper. Count Two is therefore barred by *Rooker-Feldman*.

Count Three alleges that Bellesen violated Plaintiff's constitutional rights "by requiring Plaintiff to pay any amount of monies in order to pay off a judgment that was taken in violation of [Plaintiff's] constitutional rights." Am. Compl. ¶ 36. This claim is also barred by *Rooker-Feldman* because the wrongful conduct is only alleged to be wrongful because the judgment "was taken in violation of [Plaintiff's] constitutional rights." Thus, the injury flows from the judgment rather than any independent conduct by Bellesen, and an award of damages to Plaintiff on this claim would require the Court to find that the judgment was improper. In the alternative, this claim would be barred by qualified immunity.

Count Three also alleges that Bellesen required Plaintiff "to pay amounts in excess of the amounts set forth in the aforementioned judgment" and "the amount [Plaintiff] was required to pay to obtain a release of judgment does not equate to the amount Cheryl Bellesen, while acting under color of law, required Ms. Sims to pay to obtain that release." *Id.* ¶¶ 37-38 Plaintiff alleges that "the act of requiring Plaintiff to pay sums in excess of the amount of the aforementioned judgment was willful, wanton, malicious, oppressive, and done with reckless indifference to and/or callous disregard for Plaintiff's rights." *Id.* This claim is not barred by *Rooker-Feldman* since the harm does not flow from the judgment, but from Bellesen's independent action.

2. Qualified Immunity

The Court finds that the remaining claim in Count Three – that Bellesen required Plaintiff to pay amounts in excess of the judgment to release the lien – is barred by qualified immunity. Plaintiff cites to no clearly established law that requiring a party to pay off additional amounts related to a judgment in order to release a judgment lien would be a violation of the Fourteenth Amendment.

## Conclusion

Counts One, Two, and Three (other than the claim that Bellesen required Plaintiff to pay excess amounts) are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction pursuant to *Rooker-Feldman*.

The pending motions to dismiss (ECF No. 16 & 17) are GRANTED. Counts Four and Five are DISMISSED pursuant to Texas Civil Practice & Remedies Code § 101.106(f). The remainder of Count Three is dismissed based on qualified immunity. The Court finds that, to the extent any § 1983 claims are not barred by *Rooker-Feldman*, Defendants would be entitled to dismissal based on qualified immunity. Counts Six and Seven for damages and attorney fees, being dependent on the claims on the merits, are DISMISSED.

Plaintiff's Motion for Leave to Amend (ECF No. 32) is DENIED.

The Clerk is directed to enter Judgment pursuant to Rule 58 and to CLOSE this case.

SIGNED this 11th day of January, 2021.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE